**James L. HINES, Petitioner,**

v.

**Hon. S. J. CLENDENNING, Judge of the District Court of Tulsa County, Oklahoma, Respondent.**

**No. 43902.**

Supreme Court of Oklahoma.

Feb. 17, 1970.

Dwayne C. Pollard, Craig Blackstock, Blackstock, Joyce & Pollard, Tulsa, for petitioner.

Floyd L. Walker, Tulsa, for respondent.

JACKSON, Justice.

This is an application by James L. Hines for this court to assume original jurisdiction and issue a writ of prohibition preventing the respondent judge from exercising personal jurisdiction over him in an action for divorce filed in the District Court of Tulsa County by Mrs. Glenda Schuber Hines. Although we have concluded that the writ should not be issued, we have assumed original jurisdiction in order to discuss the question presented, because of its public nature and the new statutory provisions involved.

The trial court's jurisdiction to grant a decree of divorce, based upon the domicile of the plaintiff wife in this state, is not questioned. The objection to the exercise of in personam jurisdiction arises because the wife's petition for divorce also contains a prayer for the payment of alimony and the payment of costs and attorney fees. The summons to defendant was served personally upon him in New Orleans, Louisiana, by a Deputy Civil Sheriff of Orleans Parish, and the sufficiency of the service from the procedural standpoint, under either 12 O.S.1967 Supp., Sec. 187(b), or 12 O.S.1965 Supp., Sec. 1702.01, is conceded.

The husband then filed a Special Appearance and Motion to Quash Service of Summons and Objection to Jurisdiction, supported by his affidavit. Before this was heard, the wife filed an Application for Temporary Support and Fees and Ex-penses, after which the husband filed an additional affidavit.

The wife's application and the husband's objection to the jurisdiction were heard at the same time. The gist of the husband's objection was that the court was not authorized, under either 12 O.S.1967 Supp., Sec. 187(a), or 12 O.S.1965 Supp., Sec. 1701.03(a), to exercise in personam jurisdiction over him, a nonresident defendant served with process out of the state. The only witness testifying at the hearing was the wife.

From her testimony it appears that the parties to the divorce action were married in 1959 in Norman, Oklahoma, while both were students at the University of Oklahoma. They established a home in Norman and lived there until they both graduated about a year and a half later. Since the husband could not obtain admission to the University of Oklahoma Medical School, they moved to New Orleans where he entered the Medical School of Louisiana State University, which admits only Louisiana residents. For the next four years he pursued his medical studies and she supported both of them by working as a school teacher. He graduated from Medical School in 1965, and they moved to Tulsa where he started an internship at St. John's Hospital. They lived in Tulsa about a year, during which he obtained a license to practice medicine in Oklahoma and they both registered to vote. In the summer of 1966, he entered the Air Force, and after a two months' training course in San Antonio, they moved to San Bernardino, California, where he was stationed. While they were living in California, the husband voted by means of an absentee ballot in the 1968 elections in Oklahoma.

The wife testified that in June, 1968, the husband "insisted that I leave and that I come to Oklahoma for a visit" (with her parents). She accordingly did so. About five weeks later she called him and asked him if she could come home and he told her that she could not come back, and that "there is someone else". During the next

few months he mailed her a total of about $3,800, representing, according to the wife, her share of the proceeds of the sale of certain jointly owned properties. It does not appear that they own any property in Oklahoma. The action for divorce was filed in February, 1969. There are no children. She also gave testimony to the effect that her teaching certificate had expired and that she could no longer support herself by teaching school.

The trial court overruled the husband's objection to the jurisdiction, holding in effect that the exercise of personal jurisdiction over the nonresident defendant was authorized under the circumstances, and ordered him to pay $250.00 per month temporary support, and $500.00 for temporary attorney fees. The husband then filed this original action in this court.

The only question argued in the briefs is whether, under the circumstances shown to exist, the respondent judge was authorized by either 12 O.S.1967 Supp., Sec. 187(a), or 12 O.S.1965 Supp., Sec. 1701.03(a), to exercise personal jurisdiction over the nonresident defendant.

■■■ Sec. 187, first enacted in 1963, was Oklahoma's first "long arm" statute not restricted in application to nonresident motorists. It has been characterized as "the response of the Oklahoma Legislature to the changing concept of what is required to enable state courts to exercise in personam jurisdiction over nonresidents, as reflected in the decisions of the United States Supreme Court". Genet v. Smith, Okl., 400 P.2d 161; 18 Okla.Law Rev. 435. The same may be said of 12 O.S.1965 Supp., Sec. 1701.01 et seq., which is the Oklahoma version of the Uniform Interstate and International Procedure Act. Although the uniform act did not repeal Sec. 187 (see Sec. 1706.01), it covered much the same ground but provided a considerably broader basis of jurisdiction over nonresidents. While Sec. 187 listed only four "bases of jurisdiction" the uniform act, as modified in Oklahoma, lists seven (Sec. 1701.03(a)). The seventh basis of

jurisdiction (not found in the uniform act) is as follows:

"maintaining any other relation to this state or to persons or property including support for minor children who are residents of this state which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitution of the United States."

Although this language presents some problem in statutory construction, it is clear from the concluding portion that it was the intention of our legislature to extend the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the due process requirements of the United States Constitution. In this connection, we have recently held in B. K. Sweeney Co. v. Colorado Interstate Gas Co., Okl., 429 P.2d 759, that the "doing business" limitations of 18 O.S.1961, Sec. 1.17(c) (now 1.17(d)) and 18 O.S.1961, Sec. 1.204a, are "co-extensive with and identical to, those of the minimum standards of federal due process as currently construed by the United States Supreme Court". Due process requirements must be met before the full faith and credit requirements of Article 4, Sec. 1, United States Constitution, are applicable.

In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, in discussing due process limitations in an action against a nonresident defendant, the United States Supreme Court said:

"  *  *  *  due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ".

In later cases the United States Supreme Court has further minimized the nature of the "contacts" required by the above rule, and has placed more emphasis upon the "fair play and substantial justice" aspect of it. In Travelers Health Association v.

Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L. Ed. 1154, the court sustained the jurisdiction of the Virginia Corporation Commission over the defendant, a nonprofit mail-order health insurance business incorporated in Nebraska and having its only office there, despite the fact that it had no paid agents in Virginia, and its sole business solicitation activities were conducted on a volunteer basis by its members living in Virginia. In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed.2d 223, the court sustained California's jurisdiction over the nonresident defendant insurance company upon the basis of the sale of *one* insurance policy in California. In this case the court enlarged upon the "estimate of the inconveniences" which it had mentioned as pertinent in the International Shoe Co. case. It said that the California claimant would be at a severe disadvantage if she had to follow the insurance company to a distant state in order to hold it accountable, ·and that in the case of small or moderate claims, the claimant frequently could not afford the costs of an action in a foreign forum, thus in effect making the insurer judgment-proof. It also recognized that California had a "manifest interest" in providing effective means of redress for its residents.

■ Although the courts are not in agreement as to whether the holdings in *McGee* should be limited to insurance cases (see 27 A.L.R.3d 410, footnote 12), we think the reasoning there followed is applicable and persuasive here, and that the "minimum contacts" required by the International Shoe Co. case exist in this case.

We reach that conclusion upon the basis of the following contacts of the defendant husband with this state: (1) the marriage was contracted in Oklahoma; (2) the parties twice resided here under circumstances strongly indicating domicile; (3) defendant Hines attended college here, obtained a license to practice medicine here, registered to vote and did vote here; (4) he sent his wife back to Oklahoma, her home state and the home of her parents, and refused to permit her to return to him in California; (5) the wife, at her husband's direction, was effectively abandoned in Oklahoma and her right, if any, to alimony may be said to have accrued at least in part in Oklahoma. In view of (4) above, it cannot be said that the wife is guilty of "forum shopping". Also in view of (4) it might reasonably be said that the husband helped her select the forum where, as a matter of economic necessity, she would have to live and bring her action for relief.

We think also that the pertinent "estimate of the inconveniences" mentioned by the United States Supreme Court does not preclude the exercise of in personam jurisdiction in this case. As Justice Black noted in *McGee*, with regard to the commercial transaction there involved, " * * * modern transportation and communication have made it less burdensome for a party sued to defend himself in a State where he engages in economic activity". The alternative in this case, as in *McGee*, might well be to make the nonresident defendant judgment-proof, at least as regards alimony, since economic considerations might require the wife to proceed with an action for divorce only in this state, foregoing her right, if any, to alimony, because of the expense involved in prosecuting an action in the jurisdiction where the husband now resides.

The "manifest interest" of the State of Oklahoma in the marital status, and financial relief incident thereto, of its residents, is surely as great as the interest of California in providing effective redress for insurance policy beneficiaries residing within its borders.

We should not be understood as holding that the marriage contract in this case is analogous to the insurance contract in the McGee case. Neither do we hold that the cause of action here arose out of the marriage in the sense that a cause of action for damages against a nonresident motorist arises out of the motorist's negligent operation of his automobile in this state. We simply hold that under *all* of the facts in

this case, especially including items (4) and (5) in the third preceding paragraph, the "minimum contacts" test is satisfied, and the District Court of Tulsa County is authorized by our statutes to exercise in personam jurisdiction over the nonresident husband.

The conclusions we have reached are based upon the facts and testimony that appear in the record now before us. If it should appear during the trial that the facts are other than as presented in this record the trial court necessarily will, at the conclusion of the trial, determine whether under the United States Constitution, that court has jurisdiction to enter an in personam judgment or make other financial requirements of the defendant husband.

The petition for writ of prohibition is denied.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, BLACKBIRD, HODGES and LAVENDER, JJ., concur.