UNITED STATES COURT OF APPEALS

**Filed 5/3/96**

FOR THE TENTH CIRCUIT

---

| | |
|---|---|
| WILLIAM BURKE; ROBERT L. CARLSON, BRUCE CARMAN; GERALD CIHONE; ANDREW DECARO; FRENCH DENWALT; DAMON DOKTER; DION DOKTER; FRANK DOKTER; ANGELINE ENGEMAN; DOROTHY M. FORBUS; ED FOSTER; WILLIAM FRENCH; JOHN HAARDE; MARTIN HELMKE; KEVIN HIPSHER; JACK HYDE; MIKE IGNAFFO; VIRGINIA KRIST; BOB KUNZE; FRANK LAFFADAY; ROBERT LEHMAN; LESLIE LORTZ; W.H. LONGWORTHY; DARRYL LUBER; JOE MANEK; LILA MANEK; RANDY MANEK; WANDA JEAN MAXEY, as Trustee of the Wanda Maxey Trust Fund; SHIRLEE MAE MEOLA; HUGH MULLENMEISTER; VINCENZO MURE; JAMES PENDLETON; LARRY PILGRIM; NORM PILGRIM; MIKE RANDY; KATHLEEN REINSCHMIEDT; ANNE REINSCHMIEDT; DALLAS ROACH; MIKE SEVI; VIRGINIA SEWELL; JIM SHORT; HARRY SKIDMORE; L. MIKE SMITH; HENRY I. TOOMBS, JR; LEE O. WADDLETON; ROBERT WHITLEY, | No. 95-6094 (D.C. No. CIV-92-110-C) (W.D. Okla.) |

Plaintiffs-Appellants,

v.

JERRY DON WOODS; WOODS ENERGY, INC., also known as Woods

Petroleum; DIRECT HOME
MARKETING, INC.; GARRY TEAGUE;
WAYNE BROWN; DAVID
MERRYMAN, doing business as
Merryman Drilling Company,

Defendants-Appellees.

## ORDER AND JUDGMENT[*]

Before TACHA, BALDOCK, and BRISCOE, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiffs, a group of investors in various Texas oil and gas drilling joint ventures, sued an initial group of defendants alleging damages arising from common law fraud and from violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. As the underlying predicate acts necessary to maintain the RICO claim,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

plaintiffs alleged fraud in the sale of securities, bank fraud, mail fraud, and money laundering.

The essence of plaintiffs' complaint is that defendants illegally sold interests in the oil and gas ventures while they were fully aware that the entire oil field at issue had already been sold to a third party. They further allege that one defendant negligently operated the oil field so as to enable another defendant to reacquire an interest therein. Plaintiffs eventually amended their original complaint to add Larry Teague, Garry Teague, Teague Operating Company, and David Merryman as defendants. The original defendants have confessed judgment. This appeal, therefore, involves only the latter group of defendants who are sued for their alleged roles as aiders and abettors in the claimed fraud based primarily on their failure to disclose relevant matters to plaintiffs.[1]

The district court issued two orders which are the subject of this appeal. In the first order, the court granted motions to dismiss on behalf of Garry Teague and David Merryman for lack of in personam jurisdiction. See First Attachment to Appellants' Opening Br. In the second order, the court granted the motion to dismiss on behalf of Larry Teague and Teague Operating Company holding, inter alia, that plaintiffs' securities fraud claims were

---

[1] After the filing of the complaint in this case, the Supreme Court decided Central Bank v. First Interstate Bank, 114 S. Ct. 1439 (1994), which holds that a private plaintiff may not maintain a suit under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), for aiding and abetting. Id. at 1455; see also Anixter v. Home-Stake Prod. Co., No. 95-5086, 1996 WL 31973, at *6-9 (10th Cir. Jan. 29, 1996). Neither the district court nor the parties have discussed Central Bank, and we affirm the district court on alternative grounds.

3

time-barred or, in the alternative, that they had not been pled with the specificity required by Fed. R. Civ. P. 9(b) and were thus dismissable under Rule 12(b)(6). Plaintiffs' other fraud claims and the RICO claim were similarly dismissed for plaintiffs' failure to plead them with particularity.

On appeal, plaintiffs argue that the district court erred in determining it could not exercise personal jurisdiction over Garry Teague and David Merryman consistent with principles of due process. They further argue that they have adequately pled a RICO claim against all defendants, including the required predicate acts sufficient to survive a Rule 12(b)(6) dismissal. Upon review of the briefs and record in this case, we affirm the judgment of the district court.[2]

### Personal Jurisdiction over Garry Teague and David Merryman

This suit was brought in the United States District Court for the Western District of Oklahoma. The complaint alleges that defendants Garry Teague and David Merryman reside in Texas. "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth

---

[2] Jurisdiction in this case was challenged because the notice of appeal did not set forth the names of all parties taking the appeal as required by Fed. R. App. P. 3(c) and Torres v. Oakland Scavenger Co., 487 U.S. 312, 317 (1988). However, because the appellants filed their docketing statement specifically listing the individuals taking the appeal within the time allotted to take an appeal, this court has jurisdiction. See Ayala v. United States, 980 F.2d 1342, 1344 (10th Cir. 1992).

4

Amendment." Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995)(citing Rambo v. American S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)).

The law of Oklahoma, as the forum state, determines whether the district court had jurisdiction over these nonresident defendants. Yarbrough v. Elmer Bunker & Assocs., 669 F.2d 614, 616 (10th Cir. 1982). Because Oklahoma's long-arm statute provides that state courts may exercise jurisdiction consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry. Rambo, 839 F.2d at 1416.

> The general constitutional test for personal jurisdiction is well-established. A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum State. The defendant's contacts with the forum state must also be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. A defendant's contacts are sufficient if the defendant purposefully avails itself of the privilege of conducting activities within the forum State.

Far West Capital, 46 F.3d at 1074 (quotations and citations omitted).

The only factual allegation of distinct contacts between Mr. Teague and Mr. Merryman and the State of Oklahoma relate to mail to and from the forum state. Plaintiffs allege that defendants "caused letters, checks, applications, permits, maps and other things to be delivered by the United States Postal Service to and from this district and elsewhere." See App. tab A at ¶60. However, none of the mailings are alleged to have come from defendants themselves or to have been sent to individual plaintiffs.

5

"It is well-established that . . . letters are not necessarily sufficient in themselves to establish minimum contacts." Far West Capital, 46 F.3d at 1077. Without further evidence of more substantial involvement between defendants and Oklahoma, we must agree with the district court that these isolated contacts are insufficient to allow the conclusion that these defendants "purposefully avail[ed themselves] of the privilege of conducting activities within [Oklahoma]." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Plaintiffs further argue that their allegations that defendants transacted business in Oklahoma and committed torts in Texas which caused injury in Oklahoma demonstrate sufficient contacts upon which to base personal jurisdiction. We disagree.

In Far West Capital, 46 F.3d at 1079, we held that the mere allegation that a nonresident defendant tortiously injured a forum resident does not necessarily establish sufficient minimum contacts to confer personal jurisdiction on the forum. "Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws." Id. at 1079. Because there is nothing more in the complaint than the general allegations that defendants transacted business in Oklahoma and caused torts there, the court's particularized inquiry is limited solely to the specific mailings allegedly participated in by defendants. As we have concluded above, these mailings, by themselves, are insufficient contacts upon which to base jurisdiction over these defendants.

6

Plaintiffs argue that the enactment of Fed R. Civ. P. 4(k)(2) has made minimum contact analysis irrelevant. This argument is clearly wrong. Rule 4(k)(2) provides federal long-arm jurisdiction under specified circumstances only "over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state." Defendants are subject to the courts of general jurisdiction of the State of Texas. Rule 4(k)(2), therefore, has no application here.

Plaintiffs' contention that, because we must take the factual allegations of a complaint as true when reviewing a 12(b)(6) dismissal, we are similarly bound by counsel's recital in the complaint that jurisdiction and venue are proper in the Western District of Oklahoma is without merit. The district court did not err in concluding that it could not exercise personal jurisdiction over defendants Garry Teague and David Merryman.

## RICO Claim

We now consider plaintiffs' RICO claim against defendants Larry Teague and Teague Operating Company. As noted above, defendants Larry Teague and Teague Operating Company are implicated in plaintiffs' complaint as aiders and abettors. The district court found that plaintiffs' claims under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), § 20(a) of the Exchange Act, 15 U.S.C. § 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5, were time-barred and, further, as noted above, that the § 10(b) claims were not pled with the specificity required by Fed. R. Civ. P. 9(b).

7

The dismissal of a complaint for failure to comply with the pleading requirements of Rule 9(b) is treated as a dismissal under Fed. R. Civ. P. 12(b)(6). Seattle-First Nat'l Bank v. Carlstedt, 800 F.2d 1008, 1011 (10th Cir. 1986). Because the district court dismissed plaintiff's claims on the pleadings, we determine de novo whether the claims are legally sufficient. Id. Neither this court nor the district court may weigh the evidence or consider the plaintiffs' chances of success. Id.

"To survive a Rule 12(b)(6) motion, a civil RICO claim must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir. 1989)(quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). A 'pattern of racketeering activity' is defined in 18 U.S.C. § 1961(1) to include conduct that is 'chargeable' or 'indictable' under a host of state and federal laws. National Org. for Women, Inc. v. Scheidler, 114 S. Ct. 798, 803 (1994). Among the categories of conduct "chargeable" or "indictable" under federal law are mail fraud, 18 U.S.C. § 1341, financial institution fraud, 18 U.S.C. § 1344, and fraud in the sale of securities. 18 U.S.C. § 1961(1). The district court dismissed plaintiffs' complaint for failure to allege the predicate racketeering activities with sufficient particularity to satisfy Rule 9(b).[3] We agree.

In securities fraud cases,

---

[3] Because we dispose of the RICO claim for plaintiffs' failure to sufficiently plead racketeering activity at all, we need not reach whether plaintiffs alleged sufficient facts to establish a pattern of racketeering activity.

8

Rule 9(b) does not . . . require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means . . . that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them--and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them--and how.

Seattle-First Nat'l Bank, 800 F.2d at 1011 (quoting Trussell v. United Underwriters, Ltd., 228 F. Supp. 757, 774-75 (D. Colo. 1964)).

From what we can discern from the complaint, defendants apparently sold leases to the primary violators, Jerry Don Woods and his company, Donex, which ultimately enabled Woods and Donex to consummate the later allegedly fraudulent resale to plaintiffs. Because plaintiffs here accuse defendants of secondary liability, their complaint must establish facts showing "fraud in the sale of securities by the primary violator, knowledge of that fraud by an aider and abettor, and 'substantial assistance' by the aider and abettor." Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 986 (10th Cir. 1992)(quoting Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490, 496 (7th Cir. 1986)).

After reviewing the complaint, we agree with the district court that plaintiffs have failed to meet this standard. The complaint repeatedly refers to defendants' "substantial assistance" in the fraud without elaboration. See App. tab A ¶¶ 20, 26, 32. Further allegations include conclusory charges that defendants assisted in the illegal marketing and sale of the securities, see id. at ¶ 26, and engaged in a "fraudulent course of conduct," see id.

9

at ¶ 42. We directed in <u>Seattle-First National Bank</u>, 800 F.2d at 1011, that when pleading an action for securities fraud, individual plaintiffs must allege exactly what defendants did to them, when they did it, and how the alleged fraud was perpetrated. Because plaintiffs failed to do so, this case mirrors the situation in <u>Farlow</u> where "the conclusory allegations of direct misrepresentation . . . are simply without supporting facts in terms of allegations." <u>Farlow</u>, 956 F.2d at 989. Such conclusory allegations are not enough to allege fraud with the particularity required by Rule 9(b).

Further, and again as in <u>Farlow</u>, the sum of plaintiffs' allegations is a failure by defendants to disclose pertinent features of the transaction to plaintiffs. Absent a showing of a "fiduciary or other similar relation of trust and confidence" between defendants and plaintiffs, <u>see</u> <u>Farlow</u>, 956 F.2d at 987, the failures to disclose identified in the complaint, <u>see, e.g.</u>, App. tab A at ¶¶ 33, 36(b), 54, are not actionable. Plaintiffs do not allege any such relationship.

Plaintiffs here needed to know what their claims were when the complaint was filed. "[A] plaintiff in a non-9(b) suit can sue now and discover later what his claim is, but a Rule 9(b) claimant must know what his claim is when he files it." <u>Farlow</u>, 956 F.2d at 990 (citing <u>In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.</u>, 467 F. Supp. 227, 250 (W.D. Tex. 1979)). The district court was correct to dismiss plaintiffs' claims under § 10(b) for want of specificity.[4]

---

[4] Plaintiffs' assertion that their claims under § 20 of the Exchange Act and Rule 10b-5

(continued...)

With respect to plaintiffs' claim that defendants engaged in illegal money laundering, we note that the sum of plaintiffs' money laundering allegations is that "[t]he actions of [Teague Operating Company and], L. Teague . . . constituted money laundering and bank fraud and are evidenced by specific transfers of money and deposits of money in national banks . . . " Appellants' App. tab A at ¶ 59. Plaintiffs then go on to list deposits in particular banks and checks from various defendants made payable to other defendants.

We will not go into the variety and nature of possible money laundering schemes. At least two detailed federal statutes are devoted to crimes of money laundering. See 18 U.S.C. §§ 1956, 1957. It is enough to say that plaintiffs' conclusory allegations fail to allege money laundering as a predicate offense with anything even close to the required specificity.

As discussed above, plaintiffs allege that certain transfers of money into and out of certain national banks constituted bank fraud and that the mailing of certain letters, checks, maps, etc., constituted mail fraud. See App. tab A at ¶¶ 60-62. The essence of both mail fraud and bank fraud, however, is the existence of a scheme to defraud. United States v. Kelley, 929 F.2d 582, 585 (10th Cir.), cert. denied, 502 U.S. 926 (1991). We have upheld the district court's dismissal of plaintiffs' securities fraud claims. Without the fraud scheme in place, there can be no viable mail or bank fraud claims. Plaintiffs' argument regarding the

---

[4](...continued)
can survive a finding of no claim under § 10(b) is without merit. Section 20 imposes liability on anyone who "controls any person liable under any provision of the [relevant] chapter." 15 U.S.C. § 78t(a). If there is no § 10b claim, there can be no controlling person liability based on 10(b). The same analysis applies to a claim under Rule 10b-5.

attribution of fraudulent acts among co-conspirators is irrelevant.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court


Deanell Reece Tacha
Circuit Judge